UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YURI PAVLOV, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>MARCO RUBIO, Secretary of State, et al.,<br><br>  Defendants. | Civil Action No. 25-01101 (PLF) |

**MOTION TO DISMISS AND**
**<u>MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

STATUTORY AND REGULATORY BACKGROUND ................................................................2

LEGAL STANDARDS ...................................................................................................................3

ARGUMENT ...................................................................................................................................4

      I.      Plaintiffs' Claims Fail Because There is No Discrete Agency Action that a Consular Officer is Required to Take. ....................................................................4

      II.     Plaintiffs' Claims Fail Under the Consular Non-Reviewability Doctrine. .............8

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

**Authorites Chiefly Relied Upon**

*Baan Rao Thai Rest. v. Pompeo*,
985 F.3d 1020 (D.C. Cir. 2021) .................................................................................... 9, 10

*Colindres v. Dep't of State*,
71 F.4th 1018 (D.C. Cir. 2023) ............................................................................................ 9

*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) ........................................................................................................ 1, 9

*Karimova v. Abate*,
No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) ................................ 1, 4, 5, 6, 7, 8, 10

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ............................................................................................................... 5

**Cases**

*Abdo v. Tillerson*,
Civ. A. No. 17-7519, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019) ..................................... 10

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) ........................................................................................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 3, 4

*Belizan v. Hershon*,
434 F.3d 579 (D.C. Cir. 2006) ............................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 3

*Dallas Safari Club v. Bernhardt*,
518 F. Supp. 3d 535 (D.D.C. 2021) (Mehta, J.) ................................................................ 12

*Davis v. U.S. Sent'g Comm'n*,
716 F.3d 660 (D.C. Cir. 2013) ............................................................................................. 6

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ............................................................................................. 4

*Hajizadeh v. Blinken*,
Civ. A. No. 23-1766 (LLA), 2024 WL 3638336 (D.D.C. Aug. 2, 2024) ........................... 6

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952) .................................................................................................................. 8, 9

*Hemmat v. Blinken*,
Civ. A. No. 23-2085 (TSC), 2024 WL 4210658 (D.D.C. Sept. 17, 2024) ..................................... 6

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 192 (D.C. Cir. 1992) ...................................................................................................... 3

*Ibrahim v. Spera*,
Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702 (D.D.C. Sept. 6, 2024) ....................................... 6

*In re Core Commc'ns, Inc.*,
531 F.3d 849 (D.C. Cir. 2008) ...................................................................................................... 4

*In re Ctr. for Biological Diversity*,
53 F.4th 665 (D.C. Cir. 2022) ....................................................................................................... 5

*In re Grant*,
635 F.3d 1227 (D.C. Cir. 2011) .................................................................................................... 5

*In re Nat'l Nurses United*,
47 F.4th 746 (D.C. Cir. 2022) ....................................................................................................... 5

*Janay v. Blinken*,
Civ. A. No. 23-3737 (RDM), 2024 WL 3432379 (D.D.C. July 16, 2024) .................................. 10

*Kangarloo v. Pompeo*,
Civ. A. No. 20-0354 (CJN), 2020 WL 4569341 (D.D.C. Aug. 7, 2020) ....................................... 5

*Khaksari v. Chairman, Broad. Bd. of Governors*,
451 F. App'x 1 (D.C. Cir. 2011) ................................................................................................... 5

*Kolesnikov v. Blinken*,
Civ. A. No. No. 23-1675 (TSC), 2024 WL 3638345 (D.D.C. Aug. 2, 2024) .............................. 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................................................................... 3

*Montanans for Multiple Use v. Barbouletos*,
568 F.3d 225 (D.C. Cir. 2009) ...................................................................................................... 5

*Motevali v. Blinken*,
Civ. A. No. 23-2133 (RC), 2024 WL 3580937 (D.D.C. July 30, 2024) ...................................... 11

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*,
842 F. Supp. 2d 127 (D.D.C. 2012) (Lamberth, J.) .................................................................... 12

*Papasan v. Allain*,
478 U.S. 265 (1986) ............................................................................................................... 4

*Saavedra Bruno v. Albright*,
197 F.3d 1153 (D.C. Cir. 1999) ............................................................................................. 9

*Sedaghatdoust v. Blinken*,
735 F. Supp. 3d 1 (D.D.C. 2024) (McFadden, J.) .......................................................... 7, 11

*Telecomms. Rsch. & Action Ctr. ("TRAC") v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........................................................................................... 1, 12

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005) ............................................................................................... 3

*United States ex rel. Knauff v. Shaugnessy*,
338 U.S. 537 (1950) ............................................................................................................... 9

*Wan Shih Hsieh v. Kiley*,
569 F.2d 1179 (2d Cir. 1978) .............................................................................................. 10

*Wong Wing v. United States*,
163 U.S. 228 (1896) ............................................................................................................... 9

*Yaghoubnezhad v. Stufft*,
734 F. Supp. 3d 87 (D.D.C. 2024) (McFadden, J.) ........................................................ 7, 11

**Statutes, Regulations, Rules, and Other Authorities**

22 C.F.R. § 41.121 ...................................................................................................................... 2

5 U.S.C. § 555 ............................................................................................................................. 7

8 U.S.C. § 1201 ............................................................................................................... 1, 2, 4, 5

8 U.S.C. § 1361 ........................................................................................................................... 2

D.C. Cir. R. 32.1 ......................................................................................................................... 5

Fed. R. Civ. P. 12 ................................................................................................................... 1, 3

Foreign Affairs Manual 504.1-3 ............................................................................................... 6

LCvR 7 ....................................................................................................................................... 12

By and through their undersigned counsel, Defendants respectfully move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs claim unreasonable delay and seeks to compel the Government to act on an application for a nonimmigrant visa (the "Visa Application"), which has already been refused by a consular officer in a foreign country. Plaintiffs' claims clearly lack merit under the D.C. Circuit views expressed in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), and the Supreme Court's recent ruling in *Department of State v. Muñoz*, 602 U.S. 899 (2024). These authorities make it unnecessary for the Court to apply the factors set forth in *Telecommunications Research & Action Center* ("*TRAC*") *v. Federal Communications Commission*, 750 F.2d 70, 79 (D.C. Cir. 1984), to dispose of this case.[1] Instead, the D.C. Circuit in *Karimova* made clear that after a consular officer refuses a visa application under Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), there is no further statutory or regulatory command to act, precluding mandamus relief under the Mandamus Act or the Administrative Procedure Act ("APA"). Additionally, the *Karimova* court made clear that an INA Section 221(g) refusal is a "final" refusal on the merits of a visa application, and thus, under *Muñoz* the consular nonreviewability doctrine also bars this suit.

While Plaintiffs may be frustrated with the United States immigration system, that system does not afford Plaintiffs a right to compel further consular action after a consular officer has

---

[1] Applying *TRAC* here would also lead to the dismissal of this suit. Should the Court deny this motion, the Government intends to move for judgment on the pleadings under *TRAC* as the complaint fails to state a claim for relief under the controlling standards of that case too. That said, the proliferation of challenges to visa applications refused under INA Section 221(g), especially in this district, warrants addressing dispositive issues of subject matter jurisdiction and consular nonreviewability at the threshold before considering the merits of contentions of unreasonable delay.

considered and refused the visa application at issue here. Congress has not granted that privilege to any noncitizen visa applicant or any U.S.-based sponsor. For these reasons, which are explored in depth below, the Court should dismiss this case.

## FACTUAL BACKGROUND

Through this action, Plaintiffs seek to compel the Government to re-adjudicate an application for a nonimmigrant visa. Compl. ¶¶ 4-6. Plaintiffs allege that the Visa Application was made during an interview with a consular officer in Frankfurt, Germany but was "refused" or placed into "administrative processing" at the end of the interview. *See id.* ¶¶ 2, 23-25. Plaintiffs allege that certain post-refusal administrative processes remain ongoing, claiming Plaintiffs are in the dark as to the status of those post-refusal processes. Ultimately, the period between the refusal of the Visa Application and the date Plaintiffs filed this suit was approximately six months.

## STATUTORY AND REGULATORY BACKGROUND

State Department regulations promulgated under authority of the INA provide as follows for nonimmigrant visas: "When a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa." 22 C.F.R. § 41.121(a). The INA in turn has certain provisions describing bases for refusing visa applications. One such provision, INA Section 221(g), 8 U.S.C. § 1201(g), dictates that a consular officer at a foreign post shall refuse a visa application if it appears to the consular officer from statements or papers in the application, or if the consular officer knows or has reason to believe, that the applicant is ineligible to receive a visa. INA Section 291, 8 U.S.C. § 1361, places the burden on an applicant noncitizen to establish their eligibility for the requested visa to the satisfaction of the consular officer.

Because an INA Section 221(g) refusal is based on the applicant's failure to demonstrate their eligibility for a requested visa, consular officers often afford noncitizens who have been refused under that section additional administrative processes, which may generate evidence or conclusions that would cause the officer to reconsider the refusal.  *See* State Dep't, Administrative Processing Information, available at: https://usaodc.click/AdminProcessInfo.  Notably, there is no statutory command to engage in additional administrative processes that could assist noncitizens to meet their burden to demonstrate an eligibility for a visa.  Instead, the statutory scheme dictates that a consular officer must refuse a visa to a noncitizen who fails to demonstrate their eligibility for it.  As noted above, that occurred here with respect to the Visa Application.

## LEGAL STANDARDS

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as

true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

### I. Plaintiffs' Claims Fail Because There is No Discrete Agency Action that a Consular Officer is Required to Take.

Plaintiffs cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on the Visa Application now that it has been refused under INA Section 221(g), 8 U.S.C. § 1201(g). This means Plaintiffs have failed to state a claim upon which relief can be granted, and the Court should dismiss this suit with prejudice. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("dismissal with prejudice is warranted [ ] when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

"District courts can compel agency action only in the 'extraordinary' case when they find the official committed a 'transparent violation of a clear duty to act' and has 'unreasonably delayed the contemplated action.'" *Karimova*, 2024 WL 3517852, at *1 (cleaned up; quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). Plaintiffs in suits of this type typically bring both a claim under the APA and a mandamus claim under 28 U.S.C. § 1361. On the latter, "[t]o obtain a writ of mandamus, the petitioner must show, among other things, that the agency has violated 'a crystal-clear legal duty.'" *Karimova*, 2024 WL 3517852, at *3 (citing *In re Ctr. for*

*Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022), and *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). "Similarly, to make out a claim of agency inaction under Section 706 of the APA, the plaintiff must 'identify a legally required, discrete act that the agency has failed to perform.'" *Karimova*, 2024 WL 3517852, at *3 (cleaned up; quoting *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009)). "Those two paths to compulsory relief share a common threshold: The court may act 'only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.'" *Karimova*, 2024 WL 3517852, at *2 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted)). Indeed, because the claims are functionally identical in this circumstance, *see Kangarloo v. Pompeo*, Civ. A. No. 20-0354 (CJN), 2020 WL 4569341, at *7 (D.D.C. Aug. 7, 2020), Defendants address them together herein.

In *Karimova*, the Circuit affirmed the dismissal of a post-refusal immigration mandamus suit brought against the State Department. In so doing, the court ruled that the Government has no clear, non-discretionary duty to further process or adjudicate a visa application once it has been refused by a consular officer under INA Section 221(g), 8 U.S.C. § 1201(g). Accordingly, the court held that there was no basis to compel agency action (including pending post-refusal administrative processes) either under the APA or the Mandamus Act. This holding of the D.C. Circuit is dispositive of the claims in this case,[2] where Plaintiffs seek to compel State Department

---

[2] Although *Karimova* is currently an unpublished opinion of the D.C. Circuit, under its rules, it still has binding precedential weight. *Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011) (noting that unpublished prior panel decision of the court "has the force of precedent[;]" citing D.C. Cir. R. 32.1(b)(1)(B) ("All unpublished orders or judgments of this court, including explanatory memoranda (but not including sealed dispositions), entered on or after January 1, 2002, may be cited as precedent.")). That is, while an unpublished resolution may not bind future D.C. Circuit panels, *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011), such a resolution is binding on this Court because "that decision is precedential[.]" *Davis v. U.S. Sent'g*

- 5 -

officials to act further on visa applications refused under INA Section 221(g) and undergoing post-refusal administrative processing. *Ibrahim*, 2024 WL 4103702, at *3 ("as the Circuit states quite plainly that the consul's refusing to grant an application and placing it in administrative processing is a final refusal"); *Hemmat v. Blinken*, Civ. A. No. 23-2085 (TSC), 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("The *Karimova* decision is fatal to Plaintiffs' claim of unreasonable delay. . . . Because refusal concludes the matter presented by a visa application, Section 555(b) does not establish a duty to take the action that Plaintiffs claim has been unreasonably delayed—further adjudicating the refused visa applications.").

The court examined the statutory and regulatory commands applicable to consular visa processing to assess whether the State Department had a clear duty to act on a visa application after a consular officer had refused it. *Karimova*, 2024 WL 3517852, at *1–2, 4. It found none. Specifically, while the court noted that a consular officer had a duty to either "issue" or "refuse" a visa once an application is executed at an in-person interview with a consular officer, *id.* at *1, it noted that once an application is refused, that decision is "final" under the law. *Id.* at *2 ("There is no such thing as an informal refusal or a pending case once a formal application has been made." (quoting State Dep't Foreign Affairs Manual ("FAM") 504.1-3(i))). In short, the court held:

> [Plaintiff's] appeal centers on her claim that the consular officer owed her a duty to make a "final decision" on her visa application. By "final decision," she means that the consular officer was required to either issue her a visa or refuse her application, without then also placing it in administrative processing. The district court properly dismissed that claim because [plaintiff] has not identified any law plainly

---

*Comm'n*, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013); *Ibrahim v. Spera*, Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("This Court is bound to follow this precedent. . . . the Court is unaware of any authority it might have to review or disregard a decision issued by an appellate court."); *but see Hajizadeh v. Blinken*, Civ. A. No. 23-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (finding *Karimova* is not controlling and declining to adhere to its holdings). Ultimately, controlling or not, the Court should apply *Karimova*'s holdings here as they are correct as a matter of law.

>prescribing that the consular officer not put an officially refused visa application in administrative processing.

*Karimova*, 2024 WL 3517852, at *3 (cleaned up); *see also Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024) (McFadden, J.) ("In refusing Plaintiffs' applications under § 221(g) after their interviews with consular officers, State complied with the regulations governing visa adjudications. It thereby discharged its nondiscretionary duty."); *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024) (McFadden, J.) ("[T]he only duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa.  And that duty has been performed; [the noncitizen's] application has been refused. The statute does not create an additional duty to engage in post-refusal reconsideration of the visa application." (cleaned up)).

The D.C. Circuit also rejected the noncitizen's attempt to find a clear duty to act in the general provisions of the APA itself, in particular APA Section 555(b).  *Karimova*, 2024 WL 3517852, at *3–6.  "That Section is an ancillary provision stating that each agency shall proceed to conclude a matter presented to it with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." *Id.* at *3 (cleaned up; quoting 5 U.S.C. § 555(b)).  As such, the court concluded that "[i]ts non-specific directive to all agencies to 'proceed to conclude a matter' within a 'reasonable time' and with 'due regard' to the parties leaves officials ample room for judgment based on the circumstances.  It does not plainly define and place upon consular officers a crystal-clear legal duty after they have adjudicated a visa application to then forgo any potentially beneficial follow-on administrative processing[.]"  *Karimova*, 2024 WL 3517852, at *3 (cleaned up).

Lastly, the D.C. Circuit noted "particular acute problems" in finding a clear duty to act in APA Section 555(b) in the context of the case, which (as with this action) involved the actions of a consular officer abroad.  In listing these problems, the court explained, in part, that its "starting

point is that consular officers have broad discretion when adjudicating visa applications[,]" that plaintiff's "argument hinges on defining what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires[,]" and that plaintiff's "claim is not standard administrative fare"—"[i]t arises within a field that is 'vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power.'" *Karimova*, 2024 WL 3517852, at *5 (cleaned up; quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952)).

Ultimately, the Court concluded that the plaintiff's argument hinged on a demand for action "that neither a federal statute nor regulation clearly requires." *Karimova*, 2024 WL 3517852, at *4 ("Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor[.]"). In closing, the court explained:

> [Plaintiff] sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another "final decision" on her already-refused visa application. Because [plaintiff] has not identified an adequate legal basis for that duty, the district court properly dismissed her claim.

*Id.* at *6.

The D.C. Circuit's holding in *Karimova* is dispositive of the claims presented in this case. Accordingly, the Court should dismiss this suit because Defendants have no duty to act further on the visa application at issue in this action.

## II.     **Plaintiffs' Claims Fail Under the Consular Non-Reviewability Doctrine.**

Because Plaintiffs are seeking to compel action after a consular officer has refused the requested visa, this suit runs headfirst into the consular non-reviewability doctrine, warranting its dismissal under Rule 12(b)(6). Most recently, the Supreme Court reaffirmed this doctrine, and its scope, in *Muñoz*, 144 S. Ct. at 1812. There, the Supreme Court recognized "the longstanding

- 8 -

principle 'that the United States can, as a matter of public policy . . . forbid [noncitizens] or classes of [noncitizens] from coming within their borders,' and '[n]o limits can be put by the courts upon' that power." *Id.* at 1824–25 (quoting *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)). Further, "Congress may delegate to executive officials the discretionary authority to admit noncitizens" which is "immune from judicial inquiry or interference." *Id.* at 1820 (citing *Harisiades*, 342 U.S. at 588–91). And upon exercising this authority, the consular officer's decision "'to admit or to exclude [a noncitizen]' 'is final and conclusive.'" *Id.* (quoting *United States ex rel. Knauff v. Shaugnessy*, 338 U.S. 537, 543 (1950)). Rather than explicitly cabin the doctrine of consular nonreviewability, the Supreme Court emphasized that the INA "does not authorize judicial review of a consular officer's denial of a visa" absent express congressional authorization. *Id.*

The D.C. Circuit has been equally clear, "[c]onsular nonreviewability shields a consular officer's decision to issue *or withhold* a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (emphasis added) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); *see also Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) ("Reflecting the limited role of the judiciary, the consular-non-reviewability doctrine shields a consular official's decision to issue or withhold a visa from judicial review, with two narrow exceptions." (cleaned up)). This is because "[d]ecisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Baan Rao*, 985 F.3d at 1024 (cleaned up); *see Knauff*, 338 U.S. at 543 ("it is not within the province of any court, unless expressly authorized

- 9 -

by law, to review the determination of the political branch of the Government to exclude a given [noncitizen]"); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (stating it is "settled that the judiciary will not interfere with the visa-issuing process").

Indeed, by confining the exceptions to the doctrine and noting that the doctrine prevents review of decisions to "withhold" visas, the Supreme Court's approach in *Muñoz* and the D.C. Circuit's approach in *Baan Rao* mirrors the widely held view of courts in the Second Circuit that "the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo v. Tillerson*, Civ. A. No. 17-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases; noting limited exception for "cases brought by U.S. citizens raising constitutional, rather than statutory, claims"). As such, under the Supreme Court and D.C. Circuit's recent guidance, Plaintiffs' complaint fails to state a claim for relief. *Baan Rao*, 985 F.3d at 1027-29.

While there was some debate before the D.C. Circuit's decision in *Karimova* as to whether the doctrine applied in cases seeking to compel action on visa applications in post-refusal administrative processes, *Karimova* necessitates an end to that debate. The disagreement between judges in this District before *Karimova* hinged on whether a refusal under INA Section 221(g) was final or not. *See, e.g.*, *Janay v. Blinken*, Civ. A. No. 23-3737 (RDM), 2024 WL 3432379, at *8 (D.D.C. July 16, 2024) (reasoning the doctrine is limited only to "final" decisions "to admit or exclude" a noncitizen and does not "extend[ ] beyond that limited universe"). But as noted above, the D.C. Circuit in *Karimova* rejected the notion that an INA Section 221(g) refusal was somehow not "final." *Karimova*, 2024 WL 3517852, at *2–3, 6 ("[Plaintiff] sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa

application to make yet another 'final decision' on her already-refused visa application. Because [Plaintiff] has not identified an adequate legal basis for that duty, the district court properly dismissed her claim."). Indeed, as one judge in this District has observed, "[t]he Circuit's recent, unpublished decision in *Karimova* . . . casts doubt on the accuracy of the reasoning in those decisions. In *Karimova*, the court explained that once a consular official refuses a visa application, the visa has been 'officially refused.'" *Motevali v. Blinken*, Civ. A. No. 23-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024).

Accordingly, a straightforward application of the consular nonreviewability doctrine to the "official" refusal of the Visa Application in this case precludes Plaintiffs' claims here. A consular officer has decided to withhold issuing a visa. That decision is not reviewable and ends this matter. *See Yaghoubnezhad*, 734 F. Supp. 3d at 104 ("State has already taken definitive action, and Plaintiffs want the Court to order it to engage in discretionary re-adjudication of that action more quickly. But that is, in effect, no different from ordering the State Department to reopen a dispositive adjudication."); *see also Sedaghatdoust*, 735 F. Supp. 3d at 7 ("[U]nder the consular nonreviewability doctrine, the Court cannot inquire into the basis or validity of that decision. Nor can the Court compel any kind of discretionary post-refusal reconsideration. So under the consular nonreviewability doctrine, Plaintiff is out of luck. The Court can give him nothing that he wants." (citations omitted)). Plaintiffs cannot "circumvent the doctrine by claiming that he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision[,]" by seeking, for example, "an order requiring Defendants to 'collect information' and 'exercise actual discretion in processing and adjudicating Plaintiffs' new application for a [ ] visa[.]" *Kolesnikov v. Blinken*, Civ. A. No. No. 23-1675 (TSC), 2024 WL 3638345, at *2 (D.D.C.

Aug. 2, 2024). As such, the Court should dismiss this suit with prejudice under the consular nonreviewability doctrine.[3]

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action with prejudice. A proposed order is enclosed herewith.

Dated: June 12, 2025
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:       /s/ Erika Oblea
ERIKA OBLEA, D.C. Bar #1034393
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2567
Erika.oblea@usdoj.gov

*Attorneys for the United States of America*

---

[3] Lastly, although Plaintiff brings APA claims, the basis for Plaintiff's challenge is not of final agency action, but rather agency inaction. Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply. *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539–40 (D.D.C. 2021) (Mehta, J.) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment). Moreover, the production of an administrative record at this stage is unnecessary—the United States seeks to dismiss this case not based on an administrative record, but instead based on the facts alleged in the complaint and the present status of the visa application. *See generally Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review.") (citing *TRAC,* 750 F.2d at 79).